FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 22 2020 ★
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
UNITED STATES,

-against-

LAURELL LEWIS,

Defendant.
-----------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
10-CR-622 (ADS)

**APPEARANCES:**

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the United States*
610 Federal Plaza
Central Islip, NY 11722
By: Lara Treinis Gatz, Assistant United States Attorney,
Charles N. Rose, Assistant United States Attorney.

**Keahon, Fleisher, Duncan & Ferrante**
*Attorneys for the Defendant*
1393 Veterans Memorial Highway, Suite 312 North
Hauppauge, NY 11788
By: Joseph J. Ferrante, Esq., Of Counsel.

**SPATT, District Judge:**

Defendant Laurell Lewis (the "Defendant") pleaded guilty, pursuant to a plea agreement, to possessing a gun in furtherance of a crime of violence, 18 U.S.C. § 924(c), in connection with the robbery of a post office. The Court sentenced the Defendant to 120 months' imprisonment, a sentence that he began serving in January 2015.

Presently before the Court is a motion by the Defendant pursuant to 28 U.S.C. § 2255 to vacate his conviction. He argues that his conviction cannot stand because the crime of violence to which he pleaded guilty fits only the "residual clause" definition of that term, under § 924(c)(3)(B), which the Supreme Court recently held to be unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019). The Government contends that the Defendant cannot

establish that his conviction was predicated solely on a crime of violence under § 924(c)(3)(B), and thus, that his claim lacks merit. In the alternative, the Government asserts that the Defendant is procedurally precluded from challenging his conviction, pursuant to a collateral attack waiver he signed upon pleading guilty.

For the following reasons, the Court denies the Defendant's motion, declines to issue a certificate of appealability, and closes the case. Although the Defendant establishes constitutional error in that the Court may have relied on the residual clause in sentencing him based on two predicate felonies, he fails to show prejudice, because one of those predicate felonies is a crime of violence under § 924(c)(3)(A)'s elements clause.

## I. BACKGROUND

### A. Underlying Facts

In October 2009, the Defendant participated in the robbery of a post office in Wyandanch, New York. Some of his co-defendants, Sharod Williams ("Williams"), Travis Walker ("Walker"), and Stephanie Lloyd ("Lloyd"), planned the robbery, although Lloyd did not take part. Williams and Walker recruited the Defendant, Jamel Thompson ("Thompson"), and Jeremy Hough ("Hough") to assist in the robbery.

At approximately 5:00 am on October 30, 2009, the five participants drove to the post office. Williams provided the Defendant and Hough with a pair of wire cutters and a firearm. The Defendant and Hough entered an enclosed area of the post office and waited for a phone call from Williams to alert them as to when the first postal employees would arrive.

When two post office employees arrived, the Defendant pointed a firearm at one of them; forced them to enter the post office, and directed the employees to open a safe. The Defendant and Hough then removed $7,000 from the safe.

**B. Criminal Proceedings**

In October 2011, a grand jury charged the Defendant and others by superseding indictment with several offenses connected to the post office robbery. ECF 65. The Defendant faced charges for post office robbery conspiracy (Count Four), in violation of 18 U.S.C. § 2114(a); substantive post office robbery (Count Five), in violation of 18 U.S.C. §§ 2114(a), 2, and 3551, *et seq.*; and brandishing a firearm during a crime of violence (Count Six), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(1)(C), 2, and 3551 *et seq. Id.* at 3–5.

After initially pleading not guilty, the Defendant pleaded guilty to Count Six of the superseding indictment on May 8, 2012. ECF 214. He entered the plea pursuant to a plea agreement. ECF 569-2. At his plea hearing, the Defendant said that he wished to plead guilty to the commission of the robbery of the post office, and to aiding and abetting the individual who had brandished the firearm during the robbery. *Id.* at 3–4, 28–29. However, he maintained that he was not the individual who brandished the firearm. *Id.*

Also during the plea hearing, the Defendant agreed to waive his right to appeal or collaterally attack his conviction and sentence if the Court sentenced him to a term of imprisonment of 365 months or fewer. *Id.* at 14–15. The Court told the Defendant that his plea agreement stated that he could not bring a habeas petition. *Id.* The Defendant repeatedly said that he understood the terms of the agreement. *Id.* The Defendant also said that he understood the Government's estimated United States Sentencing Guidelines ("U.S.S.G.") range for his sentence to be 292 to 365 months, provided that he accepted responsibility for the crime. *Id.* at 18–19.

On July 9, 2013, the United States Probation Department ("Probation") prepared and submitted the Defendant's Presentence Investigation Report ("PSR"). It described the Defendant as the individual who brandished the firearm during the robbery. It also said that the Defendant was a "Career Offender" under the Guidelines, because: (1) his § 924(c) brandishing conviction

constituted a crime of violence; (2) he had two prior drug trafficking convictions that qualified as "controlled substance offenses"; and (3) that accordingly, the effective Guidelines range matched the Government's estimated Guidelines range at the plea hearing.

The Defendant objected to all of the information in the PSR that described him as the person who had brandished the firearm. ECF 369. He requested a *Fatico* hearing on the issue, although he later withdrew the request. ECF 378. He had also previously objected to the PSR's labeling him a Career Offender, but he ultimately withdrew that objection as well. ECF 369.

On January 30, 2015, the Court sentenced the Defendant principally to 120 months' incarceration and five years' supervised release. ECF 402. At his sentencing hearing, the Defendant affirmed the withdrawals of his objections to the PSR that it was he who had brandished the firearm during the robbery, and that he was a Career Offender. ECF 445 at 8–9. The Court adopted the facts as found in the PSR, including the Guidelines range; the Defendant's Career Offender status; and his description as the individual who brandished the firearm during the robbery. *Id.* at 22–23. The Defendant did not file a direct appeal.

**C. Post-Conviction Proceedings**

On October 16, 2015, the Defendant filed a *pro se* motion to vacate his sentence under § 2255 (the "first § 2255 motion"). ECF 422. The Defendant raised a single claim, for ineffective assistance of counsel, based on his counsel's conceding his status as a Career Offender. *Id.* at 4. The Defendant further alleged that his counsel should have argued that one of his prior drug convictions could not be used to enhance his sentence. *Id.* at 4–7. On November 9, 2015, the Court appointed Joseph Ferrante, Esq. to represent the Defendant in connection with the first § 2255 motion. ECF 433.

While the first § 2255 motion remained pending, the Defendant filed a second habeas motion (the "second § 2255 motion"), this time with Ferrante's assistance. ECF 448. In the second § 2255 motion, the Defendant did not raise the ineffective assistance of counsel claim that he had raised in the first § 2255 motion. Instead, he raised a claim under *Johnson v. United States*, 135 . Ct. 2551, 192 L. Ed. 2d 569 (2015), arguing that Counts Four and Five did not constitute crimes of violence, thus undermining his § 924(c) conviction, because (A) the Supreme Court in *Johnson* had invalidated the Armed Career Criminal Act's ("ACCA") residual clause as void for vagueness; (B) the residual clause of § 924(c) was materially indistinguishable from that same clause, and thus also void for vagueness; (C) that post office robbery does not qualify as a crime of violence under § 924(c)'s elements clause; and (D) post office robbery and conspiracy to commit post office robbery do not qualify as crimes of violence under the two definitional prongs of § 924(c). *Id.* at 4. He also claimed that pursuant to *Johnson*, he no longer qualified as a Career Offender, and that accordingly, his guidelines would have been "vastly different going into his sentencing hearing." *Id.* at 5.

The Defendant requested in October 2016 that the Court stay the motions pending the resolution of *Johnson*-related litigation in the Second Circuit. ECF 456. The Court granted the stay, pending the outcome of the litigation. ECF 458.

On March 12, 2019, the Defendant again requested a stay, this time for the resolution of *Davis* in the Supreme Court. ECF 564. Also in that motion, the Defendant's counsel, Ferrante, said that:

> Since the *Davis* case may be favorable to Mr. Lewis, I ask the court to stay his habeas petition, however, after an exhaustive review of all other potential issues I was asked to represent Mr. Lewis on, I have found no viable [§] 2255 avenues to file on his behalf and I have discussed this with Mr. Lewis and he agrees.

*Id.* Ferrante also requested to be relieved as appointed counsel. *Id.* The Court granted the motion and Ferrante's request. ECF 565.

Following the Supreme Court's resolution of *Davis*, the Court reappointed Ferrante to represent the Defendant. ECF 567. The Defendant then filed a supplemental memorandum of law, arguing that the Court should violate his § 924(c) conviction in light of the *Davis* holding. ECF 569. That claim is presently before the Court.

## II. DISCUSSION

As a preliminary matter, the Court only rules on the Defendant § 924(c) claim raised under *Davis*. The Court deems as withdrawn the Defendant's ineffective assistance claim from the first § 2255 motion, and the *Johnson* claim from the second § 2255 motion. *See United States v. Baker*, No. 97-cr-877, 2019 WL 4918104, at *1 (E.D.N.Y. Oct. 4, 2019) ("As far as the Court can understand from the aforementioned submissions, Defendant has withdrawn . . . ."). Three instances in the record support this ruling: (1) the Defendant's March 2019 submission to the Court—in which he and his counsel agreed that there were no viable issues on which he could raise § 2255 claims, besides *Davis*; (2) his subsequently filed memorandum—which raises only the *Davis* claim; and (3) the Defendant's reply to the Government's opposition, which does not contest the Government's assertion that the Defendant had withdrawn his other claims.

Below, the Court analyzes the § 2255 claim raised pursuant to *Davis*. For the reasons that follow, the Court denies the Defendant's motion, and closes the case.

### A. The § 2255 Standard

Section 2255(a) provides as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

> the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under § 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted). In addition to showing a constitutional error, the movant must also show that the error had "substantial and injurious effect" that caused the movant "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht* to a § 2255 motion).

The Supreme Court has held that to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). The discretion to grant relief under § 2255 is to be exercised sparingly, for such applications "are in tension with society's strong interest in the finality of criminal convictions." *Elize v. United States*, No, 02-CV-1530, 2008 WL 4425286, a *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); *see also Brecht*, 507 U.S. at 633–34, 113 S. Ct. at 1719.

**B. The Parties' Arguments**

In his § 2255 motion, the Defendant contends that his conviction cannot stand because his crime of violence, which he mistakenly labels "Hobbs Act conspiracy," fits only the residual clause definition of that term found in § 924(c)(3)(B). ECF 569 at 1. The Defendant alleges that his plea and sentencing minutes do not shed light on whether the Court based his § 924(c) conviction on Count Four, the conspiracy, or Count Five, the robbery. *Id.* at 3. He also alleges that he only

pleaded guilty to aiding and abetting the brandishing of a firearm, and not aiding and abetting a robbery or conspiracy. *Id.*

The Defendant bases his motion on *Davis*, in which the Supreme Court affirmed the vacatur of a § 924(c) conviction relating to conspiracy to commit robbery. *Id.* In the alternative, if the Court rules that his conviction relied on Count Five, the Defendant raises a claim based on a case from the Northern District of California, *United States v. Chea*, No, 98-cr-20005, 2019 WL 5061085 (N.D. Cal. Oct. 2., 2019). *Id.* He asks that the Court vacate his § 924 conviction and order his immediate release. *Id.*

The Government opposes the § 2255 motion on alternative grounds, and asks that the Court deny the motion and deny a certificate of appealability. ECF 572. First, the Government contends the Defendant's collateral attack waiver bars the motion. *Id.* at 6. Second, it argues that the motion is without merit, because the Defendant cannot establish that the Court relied solely on Count Four in convicting and sentencing the Defendant. *Id.* The Government also contends that any argument based on his guilty plea for aiding and abetting is unavailing, because aiders and abettors are punishable as principals. *Id.* The Government further argues that post office robbery is factually a crime of violence under the elements clause of § 924(c). *Id.*

In reply, the Defendant argues that the collateral attack waiver does not bar a petition that questions the Government's power to constitutionally prosecute him. ECF 574 at 2. As to the merits, the Defendant argues that the judgment in his case did not contain a conviction for post office robbery, and that thus, "[t]hat robbery cannot rescue his invalid judgment of conviction for § 924(c)." *Id.*

The Court addresses each argument in turn, first ruling on the collateral attack waiver before proceeding to the *Davis* claim. For the reasons that follow, the Court holds that the attack waiver is not enforceable, but that the Defendant's motion fails on the merits.

**C. As to Whether the Appeal Waiver Bars the Defendant's Motion**

"A defendant's knowing and voluntary waiver of the right to . . . collaterally attack his conviction and/or sentence is enforceable." *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam). A waiver is knowing where the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). Although courts apply plea agreements "narrowly" and "strictly against the government," *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam) (internal quotation marks omitted), "exceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence," *see United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). For instance, "[a] violation of a fundamental right warrants voiding an appeal waiver." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011).

Based on this general rule, the Defendant's waiver of the right to collaterally attack his conviction here would be enforceable. At no point in seeking § 2255 relief does the Defendant contend that his waiver was neither knowing nor voluntary. *See Garcia-Santos v. United States*, 273 F.3d 506, 608 (2d Cir. 2001) (per curiam) (affirming that appeal waiver was knowing and voluntary where the petitioner failed to claim in § 2255 motion that he had not understood the waiver in the plea agreement); *Castillo v. United States*, No. 16-cv-5034, 2020 WL 133510, at *3 (S.D.N.Y. Jan. 13, 2020); *Elliott v. United States*, No. 17-cr-127, 2019 WL 6467718, at *4 (E.D.N.Y. Dec. 2, 2019) ("Elliott does not argue that his waiver was not knowing or voluntary.").

That the Defendant brings a *Davis* claim raises more probing questions as to the waiver's enforceability. The Second Circuit has yet to address whether a *Davis* claim, in and of itself, vitiates an appeal waiver. Courts within this Circuit diverge on the matter. *See Bonilla v. United States*, No. 07-cr-0097, 2020 WL 489573, at *3 (E.D.N.Y. Jan. 29, 2020) (deeming a collateral attack waiver unenforceable in a *Davis* claim because the petitioner argued that his conviction and sentence were no longer lawful, thus making it a violation of a fundamental right); *Elliott*, 2019 WL 6467718, at *4 (finding collateral attack waiver enforceable because "[c]ourts in this circuit have consistently rejected § 2255 petitions . . . when criminal defendants waived those challenges in their plea agreements, even when the law subsequently changed in those defendants' favor"); *Rodriguez v. United States*, No. 16-cv-1784, 2019 WL 5552325, at *4–5 (D. Conn. Oct. 25, 2019). *Cf. Leyones v. United States*, No. 10-cr-743, 2018 WL 1033245, at *3 (E.D.N.Y. Feb. 22, 2018) (declining to resolve question in a *Johnson* claim where the § 2255 motion failed on the merits).

Here, the parties dedicate scant attention to the appeal waiver in their submissions, including the above-noted issue as to whether enforcing the appeal waiver violates a fundamental right. However, the Defendant does contend that the appeal waiver fails to block his motion because the motion "call(s) into question the Government's power to constitutionally prosecute him." ECF 574 at 1–2 (internal quotation marks omitted). The Court also notes that the Second Circuit has on multiple occasions ruled appeal waivers enforceable in appeals from § 2255 motions based on *Johnson*. *See Sanford*, 841 F.3d at 579–81; *United States v. Blackwell*, 651 F. App'x 8, 9–10 (2d Cir. 2016) (summary order).

Similar to *Leyones* and *Bonilla*, this case presents a unique question regarding the enforceability of the appeal waiver in that the petitioner is raising a *Davis* claim and challenging the constitutionality of his underlying conviction. 2020 WL 489573, at *2; 2018 WL 1033245, at

*3. The Court finds the holding in *Bonilla* persuasive, as the Defendant here claims that his conviction defied the Constitution. 2020 WL 489573, at *2 ("Here, by contrast, Bonilla challenges the basis of his *conviction* under 18 U.S.C. § 924.") (internal quotation marks and brackets omitted) (emphasis in original). The Court finds further support for *Bonilla* in the holdings from other Circuits that permitted courts to reach the merits of § 2255 motions, in spite of the Defendants having signed appeal waivers. *See id.* (citing *United States v. Cornette*, 932 F.3d 204 (4th Cr. 2019) & *United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016)).

Although the parties do not address the issue, the Court briefly addresses the matter of procedural default. No procedural default question exists here, because the Defendant was sentenced prior to the holdings in *Johnson* and *Davis*. *See, e.g.*, *Aquino v. United States*, No. 13-cr-536 (PKC), 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020) ("The Court finds that there was no procedural default in failing to raise a *Johnson*-type argument before *Johnson* was decided.").

Accordingly, the Court declines to hold the appeal waiver enforceable, and it proceeds to the merits of the Defendant's § 2255 motion. For the reasons that follow, the Court denies the Defendant's motion on the merits.

**D. As to the Defendant's § 924(c) Claim under *Davis***

**1. Legal History**

The Supreme Court's holding in *Johnson* pertained to the ACCA, which created a sentencing enhancement when a violator had three or more convictions for a "serious drug offense" or a "violent felony." 135 S. Ct. at 2555 (citing 18 U.S.C. § 924(e)(1)). That statute's definition of "violent felony" contained a "residual clause" that *Johnson* held to violate due process. *Id.* at 2557.

Following *Johnson*, litigants sought to apply it holding to other statutes including, as relevant here, § 924(c). A defendant violates § 924(c) if he used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, a "crime of violence" or "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) "proceeds to define the term 'crime of violence' in two subparts": subsection (c)(3)(A) is the elements, or force clause (hereinafter the "elements clause"), and subsection (c)(3)(B) is the residual, or risk-of-force clause (hereinafter the "residual clause"). *Davis*, 139 S. Ct. at 2324. Those clauses provide that a crime of violence is a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

In *Davis*, the Supreme Court invalidated as unconstitutionally vague the residual clause in § 924(c)(3)(B), in light of the Supreme Court's holdings in *Sessions v. Dimaya*, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018), and *Johnson*. 139 S. Ct. a 2336. As a result of *Davis*, a § 924(c) conviction survives only if the predicate offense was a "crime of violence" under the elements clause. *See, e.g.*, *Rosario Figueroa v. United States*, No. 16-cv-4469, 2020 WL 2192536, at *2 (S.D.N.Y. May 6, 2020); *Vilar v. United States*, No.16-cv-5283, 2020 WL 85505, at *1 (S.D.N.Y. Jan. 3, 2020).

Courts must apply a categorical approach to determine whether an offense is a crime of violence under the elements clause. *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (citing *Taylor v. United States*, 495 U.S. 575, 600, 110 S Ct. 2143, 109 L. Ed. 2d 607 (1990)); *see United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam). Under the categorical approach,

an offense is a crime of violence where the "minimum conduct necessary for a conviction of the predicate offense" involves violence. *See Hill*, 890 F.3d at 55–56; *United States v. Culbert*, No. 19-cr-613, 2020 WL 1849692, at *1 (E.D.N.Y. Apr. 13, 2020). To determine this, a court must "look only to the statutory definitions – *i.e.*, the elements – of the offense," to resolve whether commission of the crime requires violence. *See Hill*, 890 F.3d at 55–56 (internal quotation marks and brackets omitted).

The categorical approach saves courts from determining on a case-by-case basis how violent the ultimate conduct was, or from making a more general inquiry into "the kind of conduct that the crime involves in the ordinary course." *Davis*, 139 S. Ct. at 2326 (*citing Dimaya*, 138 S. Ct. at 1216). A predicate crime will not support a conviction under the § 924(c) elements clause if there is a "a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not" involve violence. *Hill*, 890 F.3d at 56 (internal quotation marks omitted). In 2019, the Second Circuit applied the categorical approach to conspiracy to commit Hobbs Act Robbery, ruling that "*Davis* precludes us from concluding . . . that Barrett's Hobbs Act robbery conspiracy qualifies as a § 924(c) crime of violence." *United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019).

**2. The Extent of the Defendant's Burden as to Showing Reliance on the Residual Clause**

In this case, two statutes formed the basis for the Defendant's conviction; the conspiracy charge from Count Four, and the post office robbery charge from Count Five. The parties agree that it is not clear from the record whether the Court relied on the crime in Count Four, Count Five, or both, in sentencing the Defendant. They also agree, and the Court does not dispute, that if the conviction were based solely on Count Four, it would no longer stand, pursuant to *Davis*. *See* ECF 572 at 6 ("If the defendant's [§] 924(c) brandishing conviction was solely predicated on the

robbery conspiracy in Count Four, then the defendant could argue that the conviction cannot survive under the Residual Clause after *Davis*.").

The parties diverge on who bears the cost of this ambiguity. The Defendant contends that, because "there is no indication in the record as to which of the two counts were being relied on," the Court should vacate his conviction. ECF 569 at 3. The Government argues that the Court should deny the motion because the Defendant "cannot establish that the trial court necessarily relied solely on a predicate offense that constituted a crime of violence" under the residual clause. ECF 572 at 6.

The Second Circuit has yet to address this issue. *See Acosta v. United States*, No. 03-cr-11, 2019 WL 4140943, at *7 n.7 (W.D.N.Y. Sept. 2, 2019) ("The Second Circuit has not addressed the petitioner's burden in showing reliance when it is unclear from the sentencing record whether he was sentenced under the residual clause or force/elements clause.") Multiple courts in this Circuit have concluded however, that "'a petitioner can meet his burden of proving constitutional error [under *Johnson*] by demonstrating that his sentence *may have been* based on the residual clause.'" *See Memoli v. United States*, No. 04-cr-140, 2017 WL 3559190, at *11 (S.D.N.Y. July 11, 2017), Freeman, M.J, *adopted by, United States v Memoli*, 2017 WL 3504918 (S.D.N.Y. Aug. 15, 2017) (quoting *Thrower v. United States*, 234 F. Supp. 3d 372, 378 (E.D.N.Y. 2017), *rev'd on other grounds*, 914 F.3d 770 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 305 (Mem), 205 L. Ed. 2d 200 (2019)); *Diaz v. United States*, No. 16-cv-0323, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016) (ruling in *Johnson* claim that "where . . . it is unclear upon what portion of the 'violent felony' definition the sentencing court relied, a defendant has 'successfully demonstrated constitutional error simply by showing that the [c]ourt might have relied on an unconstitutional

alternative when it found [his] prior convictions for [robbery] . . . were violent felonies.'") (quoting *United States v. Ladwig*, 192 F. Supp. 3d 1153, 1159 (E.D. Wash. 2016)).

The aforementioned cases involved § 2255 motions filed under *Johnson*. In 2019, a court in the Western District of New York applied the same reasoning to *Davis*. *See Acosta*, 2019 WL 4140943, at *7 ("In light of the foregoing factors, the Court finds that Acosta has shown that the sentencing court *might have relied* upon the residual clause in finding that his § 242 convictions qualified as crimes of violence.").

Some Circuits have imposed tests mirroring this standard. *See United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017); *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017); *United States v. Taylor*, 873 F.3d 476, 480–82 (5th Cir. 2017). Other Circuits, the First, Tenth and Eleventh, require petitioners to prove by a preponderance of the evidence that the court relied on an unconstitutional ground for sentencing. *See Dimmott v. United States*, 881 F.3d 232, 243 (1st Cir. 2018); *United States v. Snyder*, 871 F.3d 1122, 1128–30 (10th Cir. 2017); *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

The Government cites *Beeman* as an example of the standard the Court should adopt here. ECF 572 at 6. The Court disagrees. To require the Defendant to prove by a preponderance of the evidence that the Court relied on a particular § 924 clause would lead to arbitrary results, based on the specificity used by judges during sentencing. *See Thrower*, 234 F. Supp. 3d at 378 ("Adopting the government's position regarding Thrower's burden of proof would mean that Thrower's petition would fail simply because I did not, during the sentencing proceeding, specify on which ACCA clauses I was relying."). The Court further notes that in cases such as this, where the Defendant received his sentence before *Johnson* and its progeny, applying the Government's proposed rule would be to require § 2255 movants to a hope that the judge sentenced them

according to a standard that did not yet exist. *See id.* ("This was simply not an issue at the time, when neither I nor the parties could have predicted that one of the clauses would be found unconstitutional seven years later."). Accordingly, the Court declines to deny the Defendant's motion for failing to meet his burden of proof, and holds that he has shown constitutional error.

**3. As to Whether the Defendant Pleaded to Committing Post Office Robbery**

Despite the Defendant's meeting the burden of proof, his motion will still fail if Count Five, post office robbery, constitutes a crime of violence under the elements clause. *See* 18 U.S.C. § 924(c) (requiring one predicate felony); *see also Thrower,* 234 F. Supp. 3d at 379 ("To prove that any reliance on the residual clause during sentencing was prejudicial, Thrower must demonstrate that, absent the residual clause, he does not have three previous convictions for violent felonies for purposes of the ACCA."). A party need not be convicted of an offense for an offense to serve as a predicate for a § 924(c) conviction. *Johnson v. United States*, 779 F.3d 125, 129–30 & n.4 (2d Cir. 2015). These offenses may serve as predicates if there is "legally sufficient proof that the crime was, in fact, committed." *See id.*; *United States v. Rivera*, 679 F. App'x 51 (2d Cir. 2017) (summary order) (denying a *Johnson* claim where the defendant's plea allocution provided sufficient proof for a predicate offense that the Goverment later dismissed at sentencing). Conversely, an indictment, standing alone, does not constitute legally sufficient proof. *See Clayton v. United States*, No. 16-cv-4967, 2020 WL 1989395, at *4 (S.D.N.Y. Apr. 27, 2020) (observing that courts rely not on indictments but "instead [focus] on the conduct to which a defendant allocates in the course of pleading guilty").

The Defendant's plea allocution provides such legally sufficient proof that the post office robbery occurred. Although the Defendant quibbled over who had brandished the firearm during the post office robbery, *see* ECF 569-2 at 3–4, he did not deny his conscious participation in the

robbery of the post office, *id.* at 7–9. In any event, the Defendant's guilty plea to aiding and abetting the brandishing of a firearm has no effect on his guilt, as the aiding and abetting statute, 18 U.S.C. § 2(a), provides that aiders and abettors are punishable as principals. 18 U.S.C. § 2(a); *United States v. Zichettello*, 208 F. 3d 72, 86 (2d Cir. 2000).

The Defendant also argues in the pending motion that he only pleaded guilty to aiding and abetting the brandishing of a firearm. ECF 569 at 3. However, the transcript from the plea hearing reveals otherwise:

> THE COURT: Aiding and abetting means that you can plead guilty to this crime of brandishing a firearm without proof that you personally did this if you willfully participated in the commission of the crime, namely, the robbery of the post office with the brandishing of a firearm, if you participated willfully and intentionally. In other words, you willfully associated yourself with this criminal venture, brandishing a firearm, and you willfully participated in it as something you wished to bring about, that you willfully sought to make this criminal venture succeed. What criminal venture? Brandishing a firearm during the course of the robbery. Do you understand what I just said?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is that what you did?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: So, while you did not personally brandish the firearm, you participated in the commission of the crime with the knowledge that it was going to be brandished. You associated yourself with that crime as something you wished to bring about, is that correct?
>
> THE DEFENDANT: Yes, sir.

ECF 569-2 at 8–9.

The Defendant's § 2255 motion strongly implies that the Defendant only pleaded guilty to aiding and abetting the brandishing of a firearm in a vacuum, absent any underlying offenses. The above-noted testimony refutes this contention. Accordingly, sufficient proof exists that the Defendant committed the act of substantive post office robbery. *See Clayton*, 2020 WL 1989395,

at *4; *Morgan v. United States*, No. 12-cr-464, 2020 WL 1699995, at *2 (S.D.N.Y. Apr. 8, 2020). In addition, the well-established principle that an individual need not be convicted of an offense for that offense to serve as a predicate for a § 924(c) conviction disposes of the arguments raised by the Defendant in his reply. *See Johnson*, 779 F.3d at 129–30 & n.4.

**4. Applying the Categorical Approach to Substantive Post Office Robbery**

The Court now applies the categorical approach to determine whether substantive post office robbery constitutes a crime of violence under the elements clause. The Second Circuit has yet to address whether substantive post office robbery is such a crime.

When a statute is "divisible," meaning that it defines multiple offenses, *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2252, 195 L. Ed. 2d 604 (2016)), courts apply a "modified categorical approach," which "permits consideration of certain materials that reveal which of a statute's separate offenses served as the basis for the defendant's conviction," *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017) (citing *Descamps v. United States*, 570 U.S. 254, 257, 133 S. Ct. 2276, 2281, 186 L. Ed. 2d 438 (2013)). This "limited class" of materials includes the underlying indictment and the trial court's jury instructions. *Descamps*, 570 U.S. at 257, 133 S. Ct. at 2281.

In the context of case where the defendant enters a guilty plea, a district court may consult a similarly circumscribed set of documents in order to determine whether the plea "'necessarily admitted facts demonstrating that his conviction was for a crime of violence.'" *United States v. Pena*, 762 F. App'x 34, 37 (2d Cir. 2019) (summary order) (quoting *United States v. Reyes*, 691 F.3d 453, 458 (2d Cir. 2012) (internal quotation marks and brackets omitted)). That inquiry is limited to the terms of the charging document, the terms of the plea agreement, or the transcript of

the plea colloquy. *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2006)).

Section 2114(a) provides as follows:

> **(a) Assault.** A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with the intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a). Section 2114(a) is divisible in that it defines two offenses: (1) assault and robbery of government property, punishable by a term of not more than ten years' imprisonment, and (2) assault and robbery of government property where the victim is wounded or his life is put in jeopardy by the use of a dangerous weapon, punishable by a term of not more than twenty-five years' imprisonment. *Id.*; *see Moody v. United States*, No. 16-cv-00472, 2020 WL 529281, at *5 (W.D.N.Y. Feb. 3, 2020).

While the Second Circuit has not ruled on whether § 2114(a) post office robbery is a crime of violence, other Circuits have ruled that the statute does constitute a violent crime under § 924(c)'s elements clause when a defendant wounds a victim or puts his life in jeopardy. *See Knight v. United States*, 936 F.3d 495, 500–01 (6th Cir. 2019); *United States v. Enoch*, 865 F.3d 575, 582 (7th Cir. 2017); *In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016). These Circuits ruled that the "use of a dangerous weapon to put the victim's life in jeopardy transforms" whatever force that could be used in an assault and robbery "into violent physical force." *Knight*, 936 F.3d at 495. In *Watt*, the Eleventh Circuit held that a defendant who enters a post office, instructs a postmaster, at gunpoint, to fill a bag with money, forces her to the ground and then threatens to shoot her if

she moves, indisputably commits a crime of violence under § 924(c)(3)(A). *See* 829 F.3d at 1289–90; *see also Enoch*, 865 F.3d at 582 (explaining that when "a defendant . . . brandish[es] a gun . . . as to put the life of a victim in jeopardy," he commits "an offense that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another'").

A court in this District also recently held that this second part of § 2114(a) constitutes a crime of violence. *McCullough v. United States*, No, 14-cv-1920, 2020 WL 869118, at *4 (E.D.N.Y. Feb. 21, 2020). In that case, the petitioner was convicted of putting persons lives in jeopardy by use of a dangerous weapon while robbing the post office. *Id.* As a result, the court denied the petitioner's § 2255 challenge to his conviction under § 924(c). *Id.; see also Moody*, 2020 WL 529281, at *8 (W.D.N.Y. Feb. 3, 2020); *James v. United States*, No 16-cv-477, 2020 WL 95655, at *6 (W.D.N.Y. Jan. 8, 2020).

The Court must now determine whether the Defendant's plea amounted to an admission of guilt as to the second part of § 2114(a), consulting the limited class of documents available. *See Descamps*, 570 U.S. at 257, 133 S. Ct. at 2281; *Pena*, 762 F. App'x at 37. First, Count Five of the superseding indictment provides that:

> On or about October 30, 2009, within the Eastern District of New York, the defendants SHAROD WILLIAMS, also known as "Sharod Brown" and "Barry," TRAVIS WALKER, STEPHANIE LLOYD and LAURELL LEWIS, also known as "TK," together with others, did knowingly and intentionally rob and assault with intent to rob one or more persons having lawful charge, control and custody of money and other property belonging to the United States, to wit: money and mail matter belonging to the United States Postal Service, of such money and other property, and in effecting and attempting to effect such robbery did put such persons' lives in jeopardy by use of a dangerous weapon.

ECF 65 at 4. The Court rules that the language from Count Five invokes the second part of § 2114(a) because it describes conduct pertaining to the use of a dangerous weapon to put the life

of a person in jeopardy in connection with the robbery of a post office. *See Enoch*, 865 F.3d at 582; *McCullough*, 2020 WL 869118, at *4.

The Defendant's plea colloquy also reveals the Defendant's admitting guilt to aiding and abetting the brandishing of a firearm in connection with a post office robbery. The Court asked the Defendant if: (a) he was pleading guilty to participating in the robbery of the Wyandanch Post Office; (b) if he knew at the time that someone was going to have a firearm; (c) if he knew that someone was going to brandish the firearm during the robbery; and (d) if he understood that to "brandish" means "to show it to the people in the post office." ECF 569-2 at 28–29. The Defendant answered "Yes, sir" to each of those questions.

Accordingly, the Court holds that the second part of § 2114(a) served as one of the predicate felonies for the Defendant's § 924(c) conviction. The Court further holds that it must deny the Defendant's § 2255 motion and deny him a certificate of appealability, because that predicate felony constitutes a crime of violence under the elements clause, and that therefore, he fails to show constitutional prejudice on his § 924 conviction. *See Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722; *McCollough*, 2020 WL 869118, at *4.

## III. CONCLUSION

For the foregoing reasons, the Court denies the Defendant's motion in its entirety. The Court also declines to issue a certificate of appealability because he has not made a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED.**

/s/ Arthur D. Spatt

Arthur D. Spatt, U.S.D.J.

May 22, 2020

Date